## Sharp, Appellant, v. Levan.

*Contract—Assessment on bank stock—Promise to pay another's assessment—Statute of frauds—Damages—Failure to show damages for breach of contract.*

1. In an action by one holder of shares in the capital stock of a national bank against another shareholder, upon an alleged oral promise to pay an assessment and contribute to a voluntary fund required by the comptroller of the currency in order that the bank, which had been compelled to close its doors, might resume business, it appeared that the defendant had promised the plaintiff that if the latter would sign the paper agreeing to pay the assessment on the stock and contribute to the voluntary fund, he would make his stock good, and to take care of him. The plaintiff was bound to pay the assessment to make the stock good, and after he signed the agreement was bound to pay the voluntary contribution to the bank. The defendant paid the voluntary contribution due by the plaintiff, but did not pay the assessment due by him, and thereafter the stock was sold as required by the National Bank Act because of refusal to pay the assessment. Suit was then brought by the plaintiff against the defendant, to recover the aggregate amount of the assessment and voluntary contribution. *Held,* that the oral promise was the promise to pay the debt of another within the statute of frauds; and that even if not within the statute, no damages resulted to the plaintiff as a result of the breach of the promise to pay the assessment.

2. In such a case the plaintiff would have to show, in order to recover, that at the time of the sale the stock was worth more than it brought plus the assessment and his share of the voluntary fund. In the absence of such evidence he was entitled- to nothing.

Argued April 16, 1912. Appeal No. 112, Jan. T., 1912, by plaintiff, from order of C. P. Blair Co., Oct. T., 1900, No. 53, refusing to take off nonsuit in case of Albert P. Sharp, now for use of Gertrude M. Sharp v. Isabelle Levan, Executrix of John P. Levan. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit for breach of contract. Before BALDRIGE, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*T. H. Greevy,* with him *E. G. Brotherlin,* for appellant.—When the leading object is to subserve some purpose of the promisor the statute of frauds does not apply: Nugent v. Wolfe, 111 Pa. 471; Elkin v. Tinlin, 151 Pa. 491; Bailey v. Marshall, 174 Pa. 602; Crawford v. Pyle, 190 Pa. 263; Baxter v. Hurlburt, 15 Pa. Superior Ct. 541; Pizzi v. Nardello, 23 Pa. Superior Ct. 535.

There was in addition a consideration: Lawrence v. McCalmont, 43 U. S. 426; Follett v. Rose, 3 McLean, 332; Hubbard v. Coolidge, 42 Mass. 84; Hind v. Holdship, 2 Watts 104.

Statute of fraud and perjuries does not apply to this case: Clark v. Jones, 85 Ala. 127 (4 So. Repr. 771); Pratt v. Humphrey, 22 Conn. 317; Goetz v. Foos, 14 Minn. 265; Ware v. Allen, 64 Miss. 545 (1 So. Repr. 738); Howard v. Coshow, 33 Mo. 118; Brown v. Brown, 47 Mo. 130; Tibbetts v. Flanders, 18 N. H. 284; Wood v. Moriarty, 15 R. I. 518 (9 Atl. Repr. 427); Grim v. Fitch, 53 Ind. 214.

*William S. Hammond,* for appellee, cited: Brodrick v. Brown, 69 Fed. Repr. 497; Bidwell v. Ry. Co., 114 Pa. 535; Leavitt v. Mining Co., 1 Pac. Repr. 356; Scammon v. Kimball, 92 U. S. 362; Maule v. Bucknell, 50 Pa. 39.

OPINION BY MR. JUSTICE ELKIN, May 6, 1912:

This is an action by one holder of shares in the capital stock of a national bank against another share-

holder upon an alleged oral promise to pay an assess-
ment and contribute to a voluntary fund required by the
comptroller of the currency in order that the bank,
which had been compelled to close its doors, might re-
sume business. The occurrences to which the contro-
versy relates took place in 1894. The oral promise
proven at the trial was as follows: "You sign that
paper and I'll make your stock good; I will take care
of you." In order to understand what was meant by the
parties and what legal obligation, if any, the promisor
assumed, it is necessary to briefly refer to the circum-
stances under which the promise was made. On account
of a large defalcation the comptroller of the currency
closed the bank and took charge of its business. The
stockholders and creditors were desirous of making
some arrangement by which the defalcation could be
made good, and the bank be permitted to resume busi-
ness. A committee, appointed for the purpose, waited
upon the comptroller of the currency, with a view of
having a plan suggested to accomplish the desired re-
sult. The comptroller agreed that if the stockholders
would make good the impairment of the capital and
assets of the bank by paying an assessment of one hun-
dred thousand dollars, and, in addition, make a volun-
tary contribution of fifty thousand dollars, the bank
might reopen its doors and resume business. The
stockholders set about to meet these requirements.
Meetings were held and plans discussed for raising the
funds necessary to meet the conditions imposed. Sharp
attended these meetings, but insisted that his financial
circumstances were such that he could not pay the as-
sessment on his stock, or contribute his share to the
voluntary fund required, and because he could not meet
these obligations, he was unwilling to sign the agree-
ment which embodied the plan for the resumption of
business by the bank. It was at this stage of the pro-
ceedings that Sharp alleges Levan made the promise
hereinbefore set out. After this promise was made

Sharp signed the agreement—the other stockholders having previously signed it. Sharp owned sixty-two shares of the par value of one hundred dollars each. The assessment on his stock was sixty-two hundred dollars, and his share of the contribution to the voluntary fund, thirty-one hundred dollars. Levan paid the thirty-one hundred dollars, but did not pay the assessment of sixty-two hundred dollars on the stock. About a year later the stock was sold as required by the national bank laws because of refusal to pay the assessment. This suit was brought by Sharp against Levan to recover ninety-three hundred dollars, being the amount of the assessment on Sharp's stock and his share of the contribution to the voluntary fund. The theory relied on to sustain a recovery is that it was necessary to pay the sum claimed in order to make the stock of Sharp good, and that this is what Levan promised to do. The defense is two-fold, that is to say, if such an oral promise was made, which is denied, it was a promise to pay the debt of another, and, therefore, within the statute of frauds; and, even if not within the statute, no damages were proved as a result of the breach of the promise to pay. We think it was clearly a promise to pay the debt of another. Sharp owned the shares of stock, and under the national banking laws he was obligated to pay the assessment, and to the extent of sixty-two hundred dollars at least, it was a debt imposed upon him by law. He was not compelled to pay the thirty-one hundred dollars into the voluntary fund, but when he signed the agreement together with the other stockholders, he assumed this obligation, which the bank could enforce against him as a personal liability. It, therefore, became his debt. It seems perfectly clear, therefore, that if Levan assumed these obligations at all, it was a promise to pay the debt of Sharp. It is true that every promise to pay the debt of another is not necessarily within the statute, and that it is sometimes difficult to draw the line between a promise within

and one not within the statute. When the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay, or discharge the debt of another, his promise is not within the statute: Bailey v. Marshall, 174 Pa. 602. The general rule is otherwise, and the authority just cited, as well as other cases of like purport, may be regarded as exceptions to the rule. In the present case, it should be noted, that the primary purpose of all stockholders was to protect the bank. The interest of stockholders as individuals was only incidental to this general purpose. The whole plan was to put the bank in position to resume business. Sharp signed the agreement for this purpose, and no doubt did so because he expected to be benefited as a stockholder. What was true of Sharp was equally true of the other stockholders, including Levan. All of the stockholders, under the plan for resumption, were primarily concerned with the affairs of the bank, and were benefited, if at all, only as their holdings of stock might be appreciated in value by the bank resuming business. They acted in concert for a single definite purpose, and it must be assumed that each stockholder expected to be benefited in proportion to the number of shares held by him. Under these circumstances we are inclined to the view that Levan had no such personal interest or purpose of his own to subserve as to bring his promise within the exception to the general rule. However, it is not necessary to rest the decision on this ground, and we do not do so. Even if it be conceded, which it is not, that the promise was binding upon Levan, appellant has failed to make out a case. What was the legal effect of the promise, if made? It was to make good the stock of Sharp, who was unable to meet the demands made upon him as a stockholder in the emergency. To make his stock good it was necessary to pay ninety-three hundred dollars. If he had paid it himself he would have had an investment of ninety-three hundred dollars, in

addition to the original cost of his stock. If Levan made good the stock by advancing the ninety-three hundred dollars, Sharp would owe him that amount of money, which he would be under obligation to pay back with interest before his stock would be good in the sense of being free from the assessment and his undertaking to contribute to the voluntary fund. Certainly Levan, under the promise relied on, was not obligated to pay into the bank ninety-three hundred dollars and have no recourse against Sharp, or the stock which stood in his name, for the amount so advanced. When the stock was sold because of the refusal, or failure, of Sharp, or anyone else, to pay the assessment, the purchaser, to all intents and purposes, stood in Sharp's place, provided, of course, that the sale was made subject to the payment of the assessment and the obligation to pay the share of the voluntary fund which Sharp had agreed to contribute, which we have no doubt must have been understood by all parties concerned at the time of the sale. If Sharp suffered any loss at all it was because the stock at the time of the sale was worth more than it brought plus the assessment and his share of the voluntary fund. In such event Sharp would have an equity, the value of which could only be ascertained from the evidence. But there is not an item of testimony upon which to base a finding that the stock was worth more than it sold for in addition to the charges against it, or to show the value of any equity that Sharp might have had in it. Appellant entirely failed to prove any damages resulting from a breach of the alleged oral promise, and we cannot see any escape from the conclusion that there was a failure to make out a case. This was the view of the trial judge when the nonsuit was entered, and the learned court below emphasized this thought in a well-considered opinion refusing the motion to take off the nonsuit. We are all of opinion that the case was properly disposed of.

Judgment affirmed.